UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY MATTHIEWS, ET AL.            CIVIL ACTION

VERSUS            NUMBER: 15-05985

CROSBY TUGS, LLC            SECTION: "R"(5)

**ORDER AND REASONS**

I.     **INTRODUCTION**

This is a maritime personal-injury case filed by Plaintiff, Troy Matthiews ("Matthiews"), against Defendant, Crosby Tugs, LLC ("Crosby Tugs") for injuries he allegedly suffered aboard a Crosby Tug vessel while employed by Daigle Towing Services, LLC ("Daigle").[1] (Rec. doc. 1). Daigle is not a party.

On July 14, 2016, Crosby Tugs issued a subpoena *duces tecum* to non-party, Aucoin Claims Service, Inc. ("Aucoin"). (Rec. doc. 10-3). Aucoin is "a full service loss prevention and claims management company" that was retained in this matter by Allianz Global Corporate & Specialty, the insurer for Daigle. (Rec. doc. 10-2 at p. 2). That subpoena precipitated the present "Motion to Quash/Modify Subpoena Duces Tecum," in which Aucoin argues that certain documents otherwise subject to production pursuant to the subpoena should be protected from disclosure under the work-product doctrine. (Rec. doc. 10). Crosby Tugs filed an opposition to the motion, to which Aucoin filed a reply, and the Court held oral argument on the matter August 17, 2016. (Rec. docs. 12, 16, 17). At the hearing, the Court

---

[1] Matthiews' wife, Tracey, is also a plaintiff.

accepted for *in camera* review the entirety of the documents that Aucoin seeks to shield from discovery. (Rec. doc. 17).

After thorough consideration of the pleadings filed by the parties, the arguments of counsel and the documents submitted for review *in camera*, the Court rules as follows.

**II.    LAW AND ANALYSIS**

The federal common law of privilege governs Aucoin's claims of privilege in this maritime case. Fed.R.Evid. 501. The burden of demonstrating the applicability of the work-product privilege rests here on Aucoin. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dept. of the Treasure, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985); *St. James Stevedoring Co., Inc. v. Femco Machine Co.,* 173 F.R.D. 431, 432-33 (E. D. La. 1997).

Rule 26(b)(3) of the Federal Rules of Civil Procedure governs the disclosure of documents prepared in anticipation of litigation and provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> Fed. R. Civ. P. 26(b)(3).

The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947); *Chevron Midstream Pipelines LLC v. Settoon Towing LLC,* No. 13-CV-2809, 2015 WL 65357 at *6 (E. D. La. Jan. 5, 2015). It protects two categories of materials: ordinary work-product and

opinion work product. *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 330–32 (D. Kan. 1991); *Bross v. Chevron U.S.A., Inc.,* No. 06-CV-1523, 2009 WL 854446 at *5 (W.D. La. 2009); *see generally Upjohn Co. v. United States*, 449 U.S. 383, 390–91, 101 S.Ct. 677, 683 (1981).

It is a widely accepted principle, however, that the work-product doctrine "is not an umbrella that shades all materials prepared by a lawyer …" or agent of the client. *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927 (1984); *see also Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99–CV–3759, 2000 WL 1145825 at *2 (E. D. La. Aug. 11, 2000). The doctrine focuses only on materials assembled and brought into being in anticipation of litigation. *Piatkowski*, 2000 WL 1145825 at *2. Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *El Paso*, 682 F.2d at 542. Work product protection also does not extend to the underlying facts relevant to the litigation. *See generally Upjohn*, 449 U.S. at 395–96, 101 S.Ct. at 685–86.

A determination whether a document was "brought into being" in anticipation of litigation necessarily entails examination of the reason or purpose for creating the document. *Beal v. Treasure Chest Casino*, No. 98–CV–0786, 1999 WL 461970 at *3 (E. D. La. July 1, 1999). The Fifth Circuit has described the standard underlying this examination as follows:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the <u>primary motivating purpose</u> behind the creation of the document was to aid in possible future litigation.
>
> *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320 (1981)(citations omitted) (emphasis added); *accord* In re *Kaiser Alum.*

3

*& Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000),
*cert. denied*, 532 U.S. 919, 121 S.Ct. 1354 (2001).

The factors that courts rely on to determine the primary motivation for the creation of a document are particularly germane in this case and include the retention of counsel and counsel's involvement in the generation of the document and whether it was a routine practice to prepare that type of document versus whether the document was instead prepared in response to a particular circumstance. *See Piatkowski,* 2000 WL 1145825 at *2; *Electronic Data Systems Corp. v. Steingraber,* No. 02–CV–0225, 2003 WL 21653414 at *5 (E. D. Tex. July 9, 2003). It is a well-accepted notion that the mere fact that a defendant[2] anticipates litigation resulting from an incident does not automatically insulate investigative reports or similar materials from discovery as work-product. *Carroll v. Praxair, Inc.*, No. 05–CV–0307, 2006 WL 1793656 at *2 (W. D. La. Jun. 28, 2006); *see also Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D. D.C. 1982). Notably, "[i]f the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation" *Piatkowski*, 2000 WL 1145825 at *2.

It is within this framework that the Court has analyzed both the documents sought to be protected and the arguments for protecting them.

As noted above, Aucoin was retained in this case as "an independent claim adjusting firm" by Allianz, the insurer for Daigle. (Rec. doc. 10-2 at p. 2). It is worth mentioning here, as Crosby Tugs did in its brief, that another Section of this Court previously (and correctly) "deduce[d] that Aucoin provides services similar to that of an insurance company; it adjusts

---

[2] Or, in this case, a non-defendant.

claims and resolves disputes short of litigation." *Piatkowski*, 2000 WL 1145825 at *3. This is borne out by the affidavit of Patrick Aucoin, the President/Owner of the company. (Rec. doc. 10-2). Also borne out by the affidavit and the actual documents reviewed by the Court *in camera* is the fact that no one from Aucoin interacted in any demonstrable way with any attorney for any party or insurer throughout the entire period of time in which the documents were created. Indeed, none of the documents were authored by, sent to or received by an attorney.

While this fact is not dispositive, it is evidence that the primary motivating purpose behind creation of the documents was not anticipation of litigation. Indeed, the very nature of the documents establishes otherwise.

If a document "would have been created regardless of whether litigation was <u>also</u> expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Piatkowski*, 2000 WL 1145825 at *2; *see also Chevron Pipeline*, 2015 WL 65357 at *7. It is abundantly clear to the Court that all of the documents Aucoin seeks to withhold as privileged were created in the routine, ordinary course of its business.

In his affidavit supporting the motion to Quash, Mr. Aucoin explains:

> Upon receiving notice of Matthiews' claimed incident of November 2014, Allianz directed Aucoin to assist Matthiews in obtaining medical treatment, to assist Daigle Towing in its duties as a Jones Act employer to provide Matthiews maintenance and cure, and to develop a record of Matthiews' medical treatment, payments made, and the facts and circumstances of his claim so that said record would be available in the event of future litigation arising out of the claimed incident.
> . . . .
> Aucoin monitored Matthiews' maintenance and cure claim from the time injury was first reported to Allianz until the present

5

> date. Aucoin also created a record in the event Matthiews retained counsel and filed suit. Aucoin assisted Allianz and Daigle Towing in its investigation of the facts and circumstances surrounding the injury claim at Allianz's behest.
>
> (Rec. doc. 10-2 at p. 2).

From these statements (and the documents reviewed *in camera*), the Court gleans the following. First and foremost, Aucoin was retained to assist the injured employee in obtaining medical care, including providing maintenance and cure payments. Not only is such an undertaking routine, the failure by the Jones Act employer to take these steps actually increases the likelihood of litigation against it in the future. Moreover, the fact that Aucoin kept a record of Matthiews' medical care and its assistance therewith on behalf of Allianz hardly makes those records litigation work product.

In his affidavit, Mr. Aucoin further states that "Aucoin monitored Matthiews' maintenance and cure claim from the time injury was first reported to Allianz until the present" and "assisted Allianz and Daigle Towing in its investigation of the facts and circumstances surrounding the injury claim at Allianz's behest." (Rec. doc. 10-2 at p. 2). But these are exactly the type of routine tasks that a claims adjusting firm like Aucoin would be expected to undertake, regardless whether it also "created a record in the event Matthiews retained counsel and filed suit." (*Id.*). The actual, substantive adjustment and provision of maintenance and cure benefits necessarily preceded any "recordkeeping" that took place ostensibly "in the event" litigation arose in the future. The latter could not take place in the absence of the former. The reverse is not only not true, it is likely not possible.

This all convinces the Court that Aucoin's claims of privilege lack merit – bare assertions about maintaining a maintenance-and-cure paper trail "in the event" of possible future litigation are simply inadequate to satisfy Aucoin's burden here.[3]

This conclusion is reinforced by the Court's actual review of the documents *in camera*. There is simply nothing in those documents that appears privileged, regardless of the documents' provenance.

### III. CONCLUSION

For the foregoing reasons, Aucoin's motion to quash or modify the subpoena duces tecum is **denied** and Aucoin is ordered to produce the documents submitted to the Court for *in camera* review within 7 days of this order.

New Orleans, Louisiana, this 26th day of August, 2016.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[3] Counsel for Aucoin appeared to suggest at the hearing that all maritime personal injuries are likely to result in litigation and, for that reason, the work-product privilege should perhaps be applied to documents like the ones at issue here as a matter of routine. The Court is unaware of any case law anywhere that supports such an argument and counsel candidly admitted that he was likewise unaware of any authority supporting that proposition.