UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY MATTHIEWS | CIVIL ACTION |
| VERSUS | NO. 15-5985 |
| CROSBY TUGS, LLC | SECTION "R" (5) |

# ORDER AND REASONS

Plaintiff Troy Matthiews moves to exclude several opinions offered by two experts for the defendant Crosby Tugs, LLC on grounds that the opinions are unreliable or irrelevant. Matthiews' motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Troy Matthiews is a tugboat captain.[1] On November 30, 2014 Matthiews was working on his ship, the MORGAN RAY, while docked in the Harvey Canal in Harvey, Louisiana. Matthiews alleges that, on that day, he suffered injuries after falling while attempting to walk between the MORGAN RAY and another tug. Matthiews further alleges that at the time of his fall the M/V CROSBY RAMBLER, owned and operated by defendant

---

1 R. Doc. 1 at 1.

Crosby Tugs, LLC, passed the MORGAN RAY at a speed that caused "excessive wave wash."[2] This wash allegedly caused the MORGAN RAY and the other tug to move apart just as Matthiews was stepping between them and therefore, according to Matthiews, caused his injury.[3] Matthiews brings claims against Crosby under maritime law, and seeks damages for lost wages, impaired wage earning capacity, physical and mental pain and suffering, loss of enjoyment of life and lifestyle, disability, scarring, and medical expenses.[4]

## II. LEGAL STANDARD

When expert testimony offered by one party is subject to a *Daubert* challenge, the Court must act as a "gatekeeper" under Federal Rule of Evidence 702. A district court has considerable discretion to admit or exclude expert testimony under Rule 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or

---

2 *Id.*

3 *Id.*

4 *Id.* at 2. Matthiews' claim for loss of consortium on behalf of his wife has been voluntarily dismissed. R. Doc. 27.

> other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the *Daubert* gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance.

First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id*. at 590.

The Court in *Daubert* articulated a flexible, non-exhaustive, five-factor test to assess the reliability of an expert's methodology: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593-95. The Supreme Court has emphasized, however, that these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, district courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. Courts have also considered whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying," *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), whether the expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994), and whether the expert "is being as careful as he would be in his regular professional work outside his paid

litigation consulting," *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997).

The Court also considers this motion recognizing that this case involves a nonjury trial. In *Daubert*, the Supreme Court's overriding concern was with the problem of exposing the jury to confusing and unreliable expert testimony. *See* 509 U.S. at 595-97. In the wake of *Daubert*, several courts have recognized that in the context of a bench trial "the *Daubert* gatekeeping obligation is less pressing," because the gatekeeper and trier of fact are the same. *Volk v. United States*, 57 F.Supp.2d 888, 896 n.5 (N.D. Cal. 1999); *see also Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (explaining that in a bench trial the *Daubert* standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."). Nevertheless, *Daubert* still applies in bench trials, and this Court must still ensure that the proffered testimony is reliable. *See id*.

Expert testimony "must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the

link between the facts and the conclusion, *et alia*." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

In *Joiner*, the Supreme Court explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." 522 U.S. at 146. Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*; *see also LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 98 (5th Cir. 2010).

If the Court is satisfied that the expert's testimony is reliable, the Court must then determine whether the expert's analysis is relevant. The question here is whether the reasoning or methodology "fits" the facts of the case and will thereby assist the trier of fact to understand the evidence. *See Daubert*, 509 U.S. at 591. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (citing *Viterbo*, 826 F.2d at 422).

## III. DISCUSSION

Matthiews challenges several opinions offered by two of Crosby's expert witnesses: Captain Marc Fazioli and Captain Tim Anselmi. The Court considers these objections in turn.

### A. Captain Marc Fazioli

#### 1. Matthiews' Coast Guard License

In his report, Fazioli describes Matthiews U.S. Coast Guard-issued merchant mariner credential.[5] Fazioli further opines that Matthiews was not, in fact, licensed to serve as master of the MORGAN RAY, or even to stand watch at the time of his injury.[6] Crosby argues that this evidence is irrelevant and may therefore be excluded under Rule 402 of the Federal Rules of Evidence.

As explained in Rule 401, evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. This Court "is afforded broad discretion in determining relevancy." *United States v. Spivey*, 506 F. App'x 332, 333 (5th Cir. 2013) (internal quotation omitted). Evidence need not be highly probative to be relevant.

---

5 R. Doc. 25-7 at 6.

6 *Id.*

*See United States v. Marshall*, 487 F. App'x 895, 900 (5th Cir. 2012) (upholding finding of relevance where evidence was "not particularly probative" and had only a "slight" tendency to demonstrate a fact of consequence); *see also Pub. Employees Ret. Sys. of Mississippi, Puerto Rico Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014) ("[T]he standard of relevance in an evidentiary context is not a steep or difficult one to satisfy."). Finally, in bench trials, such as this one, "a relevancy inquiry under Fed. R. Evid. 401 is less significant . . . because there is no danger that a judge, unlike a jury, will be misled by irrelevant or prejudicial evidence." *Williams v. City Police Abbeville*, 19 F.3d 14 (5th Cir. 1994).

Here, Crosby offers three arguments supporting the relevance of Matthiews' Coast Guard license: (1) because Matthiews was not properly licensed he "at least arguably ought not have even been aboard" the MORGAN RAY when he was injured; (2) his license status is relevant to his ability to properly secure the MORGAN RAY when docked; and (3) Matthiews' license is relevant to determining his earning capacity and lost wages.[7]

---

7 R. Doc. 28 at 5-6.

Crosby's first argument is unpersuasive. Even if Matthiews "ought not" to have been on the MORGAN RAY, Crosby cites no authority suggesting that this fact would excuse Crosby's alleged negligence. Whether Matthiews was properly licensed to serve as captain is therefore not "of consequence in determining the action," Fed. R. Evid. 401, and the challenged evidence's relationship with this fact does not support admitting it. *See* 1 *McCormick On Evid.* § 185 (7th ed. 2016) (evidence should be excluded when "the truth or falsity of the proposition that the evidence is offered to prove has no implications for an element of the claim or offense charged or to a recognized defense.").

Crosby's two remaining arguments fare better. Crosby has raised as a defense that Matthiews did not adequately secure the MORGAN RAY at the time of his injury, and is therefore himself responsible for the tug's movement and the resulting injury. The status of Matthiews' Coast Guard license is relevant to Matthiews' skill and ability in securing the MORGAN RAY. The license is also directly relevant to Matthiews' future earning capacity, and therefore to his claimed damages. Matthiews' motion to exclude this evidence is therefore denied.

**2. Failure to Timely Report Incident**

Fazioli's report also contains an opinion concerning Coast Guard incident reporting requirements.[8] Fazioli opines that Matthiews' failure to complete Coast Guard Form 2692, an accident-report form, within five days of the incident and failure to submit to drug and alcohol testing following the incident violated Coast Guard regulations. Matthiews' maintains that any failure to properly report the incident is irrelevant and must be excluded.

Crosby contends that Matthiews' failure to report is relevant because Crosby intends to argue at trial that Matthiews fabricated his injury, or at least the exact manner in which he was injured. The Court finds that Matthiews' alleged failure to follow Coast Guard protocol in reporting his injury is relevant to Crosby's defense. Although certainly far from dispositive, Matthiews' tardy disclosure, when contrasted with the prompt reporting required by law, tends to undermine Matthiews' veracity and reliability. Matthiews' motion to exclude this evidence is therefore denied.

**3. Matthiews' securing of the MORGAN RAY**

Fazioli also opines that Matthiews had failed to adequately secure the MORGAN RAY at time of his alleged injury.[9] Fazioli bases his opinion

---

8 R. Doc. 25-7 at 9.

9 *Id.* at 4,9.

primarily on Matthiews' deposition transcript and related exhibits.[10] In his deposition, Matthiews described how he secured the MORGAN RAY and the type of lines he used.[11] Specifically, Matthiews stated that he used two inch nylon lines to tie the bow and the stern of the MORGAN RAY to an adjacent tug.[12] Matthiews drew a diagram showing how the MORGAN RAY was tied.[13] Matthiews also stated in deposition that, when the CROSBY RAMBLER passed, the MORGAN RAY moved twelve to eighteen inches apart from the tug it was tied to, and that the other vessels the MORGAN RAY was tied to did not move.[14]

Based on Matthiews' testimony, Fazioli offers four basic opinions: (1) Matthiews tied the MORGAN RAY using only two "breast lines," and "[t]he use of breast lines alone can lead to, or greatly increase, the risk of lateral or twisting motion of a moored vessel"; (2) a twelve- to eighteen- inch separation suggests that there was excessive slack in the lines securing the MORGAN RAY; (3) because the other vessels tied with the MORGAN RAY did not move, they were adequately secured to the dock and each other; and (4) Matthiews "failed to secure the M/V MORGAN RAY in a reasonable or

10 *Id.* at 1,3,4.
11 R. Doc. 25-3 at 17.
12 *Id.*
13 R. Doc. 25-5.
14 R. Doc. 25-3 at 41, 45.

prudent manner." Matthiews argues that all of these opinions are unreliable because they are based on Matthiews' testimony, rather Fazioli's personal observations of the scene of the accident.

Matthiews' argument attempts to enforce a nonexistent requirement that experts personally observe an accident scene. In fact, Rule 703 explicitly contemplates expert opinions based on facts or data not personally observed or gathered by the expert. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed." (emphasis added)). Furthermore, "deposition testimony is routinely recognized as appropriate evidence on which experts may rely in formulating their opinions." *Chesapeake Louisiana, L.P. v. Innovative Wellsite Sys., Inc.*, No. 12-2963, 2014 WL 4388256, at *2 n.1 (W.D. La. Sept. 5, 2014). There is, further, no indication that Matthiews' deposition does not provide "sufficient facts or data" to support Fazioli's opinion, or that Fazioli has not "reliably applied" his expertise to these facts. Fed. R. Evid. 702; *see also Metrejean v. REC Marine Logistics, L.L.C.*, No. 08-5049, 2009 WL 3062622, at *3 (E.D. La. Sept. 21, 2009) (rejecting *Daubert* challenge to expert opinion—based, in part, on review of deposition testimony—concerning conditions of a barge at the time plaintiff slipped and fell). Matthiews' motion to exclude this evidence is therefore denied.

**4. The speed of the CROSBY RAMBLER**

Matthiews' fourth challenge concerns Fazioli's opinion that the CROSBY RAMBLER transited the Harvey Canal "in a reasonable prudent and safe manner."[15] Fazioli bases his opinion on Automatic Identification System (AIS) records. AIS is an electronic ship tracking system that uses radio technology to determine and broadcast a vessel's location, speed, heading, and other attributes. Using a commercial AIS database, Fazioli concluded that the CROSBY RAMBLER passed the MORGAN RAY at a speed of approximately 3.2 knots on the day of Matthiews' injury.[16] Fazioli also found that in the days surrounding the incident, 39 AIS-equipped vessels travelled past the MORGAN RAY's position, and that these vessels travelled at an average speed of 4.8 knots.[17]

Matthiews contends that the AIS data is insufficient to support Fazioli's conclusion that the CROSBY RAMBLER transited the canal safely. Matthiews does not challenge the AIS-based speed and location data as unreliable. Rather, Matthiews provides a laundry-list of information not recorded in AIS data, and argues that because Fazioli did not consider these other factors, his opinion is unreliable. The list includes wind and current

---

15 R. Doc. 25-7 at 10.

16 *Id.* at 5.

17 *Id.*

conditions, the physical characteristics of the barge the CROSBY RAMBLER was pushing, and the RAMBLER's engine specifications.

The Court finds that these purported deficiencies in the data underlying Fazioli's opinion provide fodder for cross examination rather than grounds for exclusion. It is true that "[w]here the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 n.8 (5th Cir. 2009). But it is equally true that limitations of time, money, and opportunity to observe constrain the data available to experts in every case. The mere assertion that other information might be relevant to an expert's conclusion does not suffice to render the conclusion unreliable. Matthiews does not provide evidence of the relevance of the factors he cites or explain how they could affect the creation of surge. Here, the Court's review of Fazioli's methods and data does not support excluding the opinion on grounds of insufficient information. This conclusion is further supported by the reduced importance of the gatekeeping function in bench trials. *See, e.g.*, *Volk v. United States*, 57 F.Supp.2d 888, 896 n.5 (N.D. Cal. 1999).

Finally, Matthiews argues that evidence concerning the speed of other vessels that passed the MORGAN RAY's position in the days surrounding this incident is not relevant. Actions of third parties are not *dispositive* as to

whether the defendant in this case acted reasonably. *See e.g. McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174 (5th Cir. 1979) ("[W]hat ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.") Nonetheless, the actions or customs of third parties in analogous situations are generally relevant in determining whether a specific defendant acted reasonably. *See* Restatement (Second) of Torts § 295A (2016) ("In determining whether conduct is negligent, the customs of the community, or of others under like circumstances, are factors to be taken into account, but are not controlling where a reasonable man would not follow them."). Matthiews' motion to exclude this evidence is therefore denied.

**5. The Vocational Rehabilitation Report**

Finally, Matthiews challenges Fazioli's opinions concerning a "vocational rehabilitation report" prepared by Matthiews' expert Nancy Favaloro. In her report, Favaloro opines that Matthiews will likely suffer a loss in earnings based on his injury.[18] Favaloro bases her opinion, in part, on an opinion from Dr. David Elias, Matthiews' treating physician. According to Favaloro, Dr. Elias has restricted Matthiews from lifting more

18 R. Doc. 28-3 at 2.

than twenty pounds.[19] In response, Fazioli notes that Matthiews completed a Coast Guard physical in June 2015, and that in order to pass the physical Matthiews was required to demonstrate the ability to, among other tasks, lift forty pounds from the ground.[20]

Matthiews argues that Fazioli is not vocational therapist, and is therefore not qualified to critique Favaloro's expert opinion. "To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). Matthiews is correct in asserting that Fazioli has demonstrated no expertise in vocational therapy. However, even a cursory review of Fazioli's report reveals that his critique of Favaloro is not based on her *methods*. Rather, Fazioli challenges a key *assumption* made by Favaloro: that Matthiews cannot, or should not,

---

19 *Id.*

20 R. Doc. 25-7 at 8.

lift more than twenty pounds. In doing so, Fazioli relies on Coast Guard records and regulations which, unlike vocational therapy, sit comfortably within the bounds of his expertise. Fazioli's opinion therefore "will probably aid the trier in his search for truth," *Hicks*, 389 F.3d at 524, and is properly admitted.

**B. Captain Tim Anselmi**

**1. The speed of the CROSBY RAMBLER**

Anselmi, like Fazioli, concludes based on AIS data that the CROSBY RAMBLER travelled past the MORGAN RAY at 3.2 knots.[21] Anselmi further opines that this speed is not excessive and was not a factor in causing Matthiews' fall.[22] Matthiews' objection here mirrors his objection to Fazioli's similar opinion. It is overruled for the same reasons.

**2. Whether Matthiews should have expected the movement caused by the CROSBY RAMBLER**

Anselmi's also offers a second opinion: that Matthiews' should have expected vessels transiting the canal to cause the MORGAN RAY to move, and that Matthiews' failure to appreciate this fact before crossing between vessels is "considered to be the cause of his alleged incident."[23] This opinion

21 R. Doc. 25-8 at 3.
22 *Id*. at 2.
23 *Id*. at 3.

is based on Anselmi's observations that Matthiews: (1) "was an experienced captain aware of the hazards" of crossing between ships; (2) "should have been aware of his surroundings" and "should and could have seen the effects of an approach vessel"; and (3) "could have and should have tightened the mooring lines of his vessel prior to attempting to cross."[24]

As noted, expert testimony is admissible only when it is likely to assist the trier of fact. *Hicks*, 389 F.3d at 524. Unless an expert offers a "specialized understanding of the subject involved in the dispute" his testimony is unhelpful and may be excluded. *See* Fed. R. Evid. 702, advisory committee's notes. Here, Anselmi concludes that Matthiews caused his own accident based on his opinion that Matthiews should have been aware of his surroundings and seen the effect of an approaching vessel. These are common sense observations that do not require expert testimony. They amount to an application of the truism "look before you leap." Further, Anselmi's opinion that Matthiews could have tightened the mooring lines is cumulative of Fazioli's more detailed opinion. Anselmi's opinion that Matthiews caused his own accident is therefore excluded as unhelpful to the trier of fact and unnecessarily cumulative of other experts. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (upholding exclusion

---

24 *Id.*

of expert testimony where "the jury could adeptly assess this situation using only their common experience and knowledge."); *see also Williams v. Eckstein Marine Servs., Inc.*, No. 91-3026, 1992 WL 373616, at *1 (E.D. La. Dec. 9, 1992) (excluding expert opinions that, consistent with "common trend," offer little more than the experts' "conclusion as to what the law is or ought to be, as far as fixing responsibility for the accident"). Matthiews' objection to this opinion is therefore sustained.

## IV. CONCLUSION

For the foregoing reasons, Matthiews' motion to exclude is DENIED as to the opinions of Captain Marc Fazioli, DENIED as to Captain Tim Anselmi's opinion regarding the speed of the CROSBY RAMBLER, and GRANTED as to Anselmi's opinion regarding Matthiews' role in causing his own injury.

New Orleans, Louisiana, this __18th_ day of November, 2016.

_____________________
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE