UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY MATTHIEWS                                      CIVIL ACTION

VERSUS                                              NO. 15-5985

CROSBY TUGS, LLC                                    SECTION "R" (5)


**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Troy Matthiews, a tugboat captain, brings a personal injury claim for general maritime negligence against defendant Crosby Tugs, LLC. Matthiews alleges that on November 30, 2014 a tug owned and operated by Crosby passed Matthiews' tug at an unreasonably high speed, causing excessive wave wash. The wave wash allegedly caused Matthiews to fall and injure himself while stepping between two vessels.

Pursuant to a suggestion by the parties,[1] the Court bifurcated trial in this matter into separate liability and damages phases.[2] On December 5, 2016, the Court held a bench trial on the issue of liability. There is no dispute that the incident in question occurred on navigable waters and bears a significant relationship to traditional maritime activity. The case is therefore

---

[1]      R. Doc. 34 at 25.
[2]      R. Doc. 33 at 1.

governed by federal maritime law, and the Court has jurisdiction over Matthiews' claim under 28 U.S.C. 1333.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1376 (5th Cir. 1988).  After hearing live testimony and reviewing the evidence, the Court rules as follows.

## I.    DISCUSSION

### A. Parties

Plaintiff Troy Matthiews has been working on commercial towing vessels since 1985.[3]  Matthiews first began working for Daigle Towing Service, LLC around 2010.[4]  After 2 years with Daigle, Matthiews left briefly to work for other tug operators, before returning to Daigle in 2013.[5]  Beginning in 2013 and continuing through the date of his injury, Matthiews served as captain of one of Daigle's tugboats, the M/V MORGAN RAY.[6]

---

[3]    Testimony of Troy Matthiews.
[4]    *Id.*
[5]    *Id.*
[6]    *Id.*

2

Defendant Crosby Tugs, LLC is a Louisiana limited liability company in the business of commercial marine towing.[7]  Crosby operates the M/V CROSBY RAMBLER, a sixty-two foot tugboat.[8]

## B. Matthiews' Account

Matthiews testified that on November 30, 2014, he was aboard the MORGAN RAY, moored at a Daigle facility on the south bank of the Harvey Canal in Harvey, Louisiana.[9]  The MORGAN RAY was tied to another tug, the M/V BAROID 111.[10] The BAROID 111 was tied to an unnamed barge, which was, in turn, secured to the dock.[11]  Two other the vessels, the M/V CAPTAIN CJ and the M/V MISS LAURIE, were tied perpendicular to the barge, BAROID, and MORGAN RAY.[12]  The CAPTAIN CJ was directly to the east of the BAROID 111, and the MISS LAURIE was tied directly to the west.[13] Matthiews testified that two deckhands had tied the MORGAN RAY to the BAROID 111 using two, two-inch nylon lines.[14] One line ran from the starboard quarter bitt of the MORGAN RAY to the port quarter bitt of the

---

[7]     R. Doc. 5 at 4.
[8]     Ex. 3.
[9]     Testimony of Troy Matthiews.
[10]    *Id.*
[11]    *Id.*
[12]    *Id.*
[13]    *Id.*
[14]    *Id.*

BAROID 111, and the other ran from the MORGAN RAY's starboard quarter bow bitt to the BAROID 111's port quarter bow bitt.[15]  Matthiews testified that he inspected the lines securing the MORGAN RAY and found them to be adequately affixed.[16]

Matthiews stated that on the afternoon of November 30, 2014, the MORGAN RAY had been tied at the Daigle dock for two-and-a-quarter days.[17] Matthiews was painting the hull of the MORGAN RAY, when he got something stuck in his eye.[18]  Matthiews attempted to wash out the debris, and then decided to leave the MORGAN RAY to seek assistance in further flushing his eye.[19]  As he was stepping between the MORGAN RAY and the BAROID 111, the MORGAN RAY moved twelve to eighteen inches away from the BAROID 111.[20]  This movement caused Matthiews to fall and become wedged between the two tugs with one leg dangling down into the canal.[21] Matthiews struggled to free himself for approximately six to eight minutes, before climbing back on the deck of the MORGAN RAY.[22]  In the process of

---

[15]     *Id.*
[16]     *Id.*
[17]     *Id.*
[18]     *Id.*
[19]     *Id.*
[20]     *Id.*
[21]     *Id.*
[22]     *Id.*

4

freeing himself, Matthiews dislocated his shoulder.[23] Once back on the deck, Matthiews pulled his shoulder back into place by grasping the high rungs of a ladder and squatting.[24]

Matthiews stated that he heard—but did not see—a vessel passing the MORGAN RAY as he fell.[25]  Specifically, Matthiews heard the sounds of chains and engine noise passing him.[26]  At the time he fell, Matthiews' view of the canal was blocked by the structure of the MORGAN RAY.[27]  After relocating his shoulder, Matthiews looked out and saw a tug boat on the canal approximately one quarter- or one half-mile to the east.[28]  Matthiews testified that the vessel bore Crosby's distinctive gray, white, black, and red color scheme, and was causing a wave wash of between one and one-and-a-half feet.[29]  Based on these observations, Matthiews concluded that a Crosby tug had caused excessive wave wash as it passed the MORGAN RAY, which caused the MORGAN RAY to shift and Matthiews to fall.[30]

---

[23]   *Id.*
[24]   *Id.*
[25]   *Id.*
[26]   *Id.*
[27]   *Id.*
[28]   *Id.*
[29]   *Id.*
[30]   *Id.*

Sometime after his fall, Matthiews attempted to call his employer, Albert Daigle.[31]   Receiving no answer from Daigle, Matthiews called his wife.[32]   Matthiews' wife then called Gabe Bourgeois, Matthiews daughter's boyfriend, and asked Bourgeois to drive Matthiews to the hospital.[33] Later that evening, Bourgeois drove Matthiews to Teche Regional Medical Center in Morgan City, Louisiana, where Matthiews was treated for injuries to his shoulder.[34]

### C. Other Evidence

There is ample evidence to support, and Crosby does not dispute, that the CROSBY RAMBLER pushed an empty barge past the Daigle facility on Harvey Canal on the afternoon of November 30, 2014.   Aside from Matthiews' testimony, however, there is no evidence in the record supporting Matthiews' assertion that the RAMBLER traversed the Canal at an unreasonable speed, or that wave wash produced by the RAMBLER caused Matthiews' injury.

Matthiews completed a U.S. Coast Guard Report of Marine Casualty form on December 9, 2014, ten days after the incident.[35]   On the form,

---

[31]     *Id.*
[32]     *Id.*
[33]     *Id.*
[34]     *Id.*; Ex. 16.
[35]     Ex. 1; testimony of Troy Matthiews.

Matthiews briefly describes the accident, saying he was "caught between two boats."[36]  Matthiews, however, makes no mention of wave wash, the RAMBLER, or any other vessel.[37]   Instead, the "Description of Casualty" section of the form—a large white space that instructs the reporter to "[d]escribe how the accident occurred"—is left blank.[38]  Matthiews testified that he provided a written account of the incident, including the role played by the RAMBLER, on a separate sheet of paper that he completed with the Coast Guard form.[39]  This paper, which Matthiews claims he gave to a Daigle claims adjuster,[40] is not in evidence.

Matthiews' account is also unsupported by the witnesses he called at trial.  Matthiews concedes that no one saw him fall.[41]  Matthiews' wife Tracy confirmed that Matthiews called her after the incident.[42]   Matthiews' daughter's boyfriend, Gabe Bourgeois, testified to driving Matthiews to the hospital.[43]   But neither could shed any light on the events surrounding Matthiews' alleged fall.

---

[36]     Ex. 1.
[37]     *Id.*
[38]     *Id.*
[39]     Testimony of Troy Matthiews.
[40]     *Id.*
[41]     *Id.*
[42]     Testimony of Tracey Matthiews
[43]     Testimony of Gabe Bourgeois.

Crosby, by contrast, presented significant evidence at trial tending to contradict Matthiews' account. Captain Alex Pomacino was in command of the RAMBLER on the day in question as it pushed an empty 195 by 35 foot barge down the Harvey Canal.[44]   Pomacino stated that he took the RAMBLER past the MORGAN RAY at the minimum speed possible without disengaging one of the vessel's two engines.[45]   According to Pomacino, putting one engine in neutral is dangerous and causes the vessel to pull to one side.[46]   Pomacino testified that he operated the vessel at a reasonable speed, that the ship and barge created little wave wash, and that his passing had no effect on the ships moored at the Daigle dock.[47] This assertion is strongly supported by the testimony of Crosby's two expert witnesses, Captains Marc Fazioli and Tim Anselmi.

Fazioli testified primarily regarding Automatic Identification System (AIS) records related to the CROSBY RAMBLER and other ships travelling on the Harvey Canal.[48]   AIS is an electronic ship tracking system that uses

---

[44]   Testimony of Alex Pomacino.

[45]   *Id.*

[46]   *Id.*

[47]   *Id.*

[48]   Testimony of Marc Fazioli.   Throughout his testimony, Fazioli referenced exhibits containing data drawn from the PortVision commercial AIS database.   *See* Ex. 23, 26-28.   These exhibits were admitted, over Matthiews' objection, under the hearsay exception for records of a regularly conducted activity.   *See* Fed. R. Evid. 803(6).   The Court found that Fazioli,

radio technology to broadcast a vessel's location, speed, and other attributes.[49]   Using a commercial AIS database, Fazioli concluded that the CROSBY RAMBLER passed the MORGAN RAY at a speed of approximately 3.2 knots on the day of Matthiews' injury.[50]   Fazioli also found that in the days surrounding the incident, 39 AIS-equipped vessels travelled past the MORGAN RAY's position, and that these vessels travelled at an average speed of 4.8 knots.[51] Only three of these vessels passed the MORGAN RAY travelling slower than 3.2 knots.[52] Finally, Fazioli testified that, according to the AIS data, another tug passed the MORGAN RAY at a speed of 6.5 knots, more than twice the RAMBLER's speed.[53]   This passage occurred less than

---

who testified that he has worked as subcontractor for PortVision and interacts extensively with PortVision employees, was a "qualified witness" for purposes of establishing the Rule 803(6) conditions, *see id*; *U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 416 (5th Cir. 2010) (recognizing that a person outside the organization whose records are sought to be admitted may be a "qualified witness"), and that Fazioli's testimony demonstrated that these conditions were met.   The Court further notes that the probative value of the PortVision records "in helping the [finder of fact] evaluate [Fazioli's] opinion substantially outweighs their prejudicial effect."   Fed. R. Evid. 703.   Therefore, even if Crosby had not been permitted to admit these exhibits into evidence, Fazioli disclosure of the underlying AIS data on the stand remains permissible.   *Id.*

[49]     *Id.*
[50]     Testimony of Marc Fazioli; Ex. 23.
[51]     Testimony of Marc Fazioli; Ex. 26.
[52]     Testimony of Marc Fazioli; Ex. 26.
[53]     Testimony of Marc Fazioli; Ex. 26.

thirty minutes before the RAMBLER passed the Daigle dock, and this other tug was, like the RAMBLER, pushing a barge.[54]

Captain Anselmi, Crosby's other expert witness, testified that, based on his experience serving as a tugboat captain in the Harvey Canal, 3.2 knots is a reasonable and safe speed for a tugboat pushing an empty barge.[55] Anselmi further testified that when travelling at this speed the vessel would not create any unusual or unexpected wave wash.[56] Finally, Anselmi testified that 3.2 knots was an appropriate speed in a "no wake zone" like the Harvey Canal.[57] No witness, other than Matthiews, disputed Anselmi's convincing assertion that 3.2 knots was a safe and reasonable speed for the relevant location and conditions.

The AIS data provided by Fazioli also undermined Matthiews' timeline of his injury. The data showed that the RAMBLER passed the MORGAN RAY at 4:29 p.m. on November 30, 2104.[58] In the Coast Guard Report of Marine Casualty form, Matthiews wrote that his injury occurred "around" 2:00 p.m. to 3:00 p.m.[59] One week after completing the report, Matthiews gave a

---

[54]    Testimony of Marc Fazioli; Ex. 10.
[55]    Testimony of Tim Anselmi.
[56]    *Id.*
[57]    *Id.*
[58]    Testimony of Marc Fazioli; Ex. 23.
[59]    Ex. 1.

statement to a Daigle claims adjuster and stated that his accident occurred between 2:00 p.m. and 4:00 p.m.[60]  At trial, Matthiews conceded that he did not know when his injury occurred and that it may have happened after 4:00 p.m.[61]

### D. Whether the CROSBY RAMBLER caused Matthiews' injury by passing the MORGAN RAY at an unreasonable speed.

To state a claim for maritime negligence, "the plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (internal quotations and modifications omitted).  "A vessel has a duty to proceed carefully and at such speed so as to avoid creating unusual swells which may damage persons or property along the shores."  *Maxwell v. Hapag-Lloyd Aktiengesellschaft, Hamburg*, 862 F.2d 767, 768 (9th Cir. 1988); *O'Donnell Transp. Co. v. M/V MARYLAND TRADER*, 228 F.Supp. 903, 909 (S.D.N.Y. 1963) ("Only unusual swells or suction which cannot be reasonably anticipated furnish the basis for a claim."); *Barthelemy v. Phillips Petroleum*

---

[60]    Testimony of Troy Matthiews.
[61]    Testimony of Troy Matthiews.

*Co.*, 1999 WL 65024, at *3 (E.D. La. Feb. 9, 1999) (holding that plaintiff injured when wake of passing vessel hit his boat "must prove, by a preponderance of the evidence, that [the operator of a passing vessel] failed to exercise reasonable care that an ordinary, reasonable and prudent person would have used under similar circumstances").  Accordingly, Matthiews must establish that Pomacino, on behalf of Crosby, operated the CROSBY RAMBLER negligently and that this negligence created an unusual, excessive swell which injured Matthiews.  The facts and circumstances of each particular case determine whether a vessel is responsible for damages created by her swells.  *See Gregg v. Weeks Marine, Inc.*, No. 99-1586, 2000 WL 798493, at *4 (E.D. La. June 21, 2000) (citing *Moran v. M/V GEORGIE MAY*, 164 F.Supp. 881, 885 (S.D. Fla. 1958)).

The Court finds that Matthiews failed to prove by a preponderance of the evidence that the CROSBY RAMBLER negligently transited the Harvey Canal in a manner that produced unusual swells or suction.  In reaching this conclusion, the Court relies primarily on the unrefuted AIS data presented by Captain Fazioli showing that the RAMBLER passed the MORGAN RAY at a speed of 3.2 knots.  The Court finds Captain Anselmi's opinion that 3.2 knots is reasonable speed for a tug pushing an empty barge on the Harvey Canal to be persuasive.  This conclusion is buttressed by the AIS data

12

concerning other vessels that passed the MORGAN RAY in the days surrounding the incident. *See* Restatement (Second) of Torts § 295A (2016) ("In determining whether conduct is negligent, the customs of the community, or of others under like circumstances, are factors to be taken into account, but are not controlling where a reasonable man would not follow them."). The data shows that these vessels passed at an average speed of 4.8 knots, and that one tug—also pushing a barge—passed at more than twice the RAMBLER'S speed. As a whole, this data, when combined with Captain Pomacino's testimony that he operated the RAMBLER reasonably, outweighs Matthiews' unsupported and self-interested account. This is particularly true given Matthiews' inconsistencies, failure to document his incident, and admittedly poor opportunity to observe the vessel that allegedly led to his fall. The Court also finds that the weight of Matthiews' testimony is undermined by his claimed inability to recall a visit to a hospital emergency room for shoulder pain less than a year before his alleged fall.[62]

Even if the Court were to credit Matthiews' assertion that his fall was caused by a passing vessel traveling at an unreasonable speed, his testimony is not credible evidence that this vessel was, in fact, the RAMBLER. As noted, the Coast Guard incident report that Matthiews completed ten days after the

---

[62]    Testimony of Troy Matthiews; Ex. 33.

incident states that Matthiews' injury occurred between 2:00 and 3:00 p.m.[63]   AIS data, however, confirms that the RAMBLER passed the MORGAN RAY at 4:29 p.m., and that another tug, also pushing a barge, passed the MORGAN RAY less than thirty minutes earlier, travelling twice the speed of the RAMBLER.[64]   Furthermore, Matthiews admits that he only saw the tug that he blames for his accident approximately eight or ten minutes after his fall, and that the tug was at least a quarter-mile away when he saw it.[65]   Even assuming that excessive wave wash contributed to Matthiews' injury, the Court finds that Matthiews' evidence, taken as a whole, cannot meet his burden to show that the offending vessel was the CROSBY RAMBLER.

For these reasons, the Court concludes that the weight of the evidence does not support Matthiews' allegations that the CROSBY RAMBLER passed the MORGAN RAY at an unreasonable speed, or that the RAMBLER caused Matthiews' fall.  Matthiews has therefore failed to meet his burden to show that Crosby breached its duty to avoid creating unusual swells, and also failed to show that there is a causal connection between Matthiews' injury and

---

[63]   Ex. 1.
[64]   Testimony of Marc Fazioli.
[65]   Testimony of Troy Matthiews.

14

Crosby's actions.  Accordingly, Matthiews' claim against Crosby for general maritime negligence fails.[66]

## II.   CONCLUSION

For the foregoing reasons, judgment is entered in favor of the defendant, Crosby Tugs, LLC.

New Orleans, Louisiana, this __9th__ day of December, 2016.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[66]   Because the Court finds that Matthiews has failed to meet his burden it need not consider whether recovery is barred by Matthiews' own contributory negligence—both in failing to adequately secure the MORGAN RAY and in failing to anticipate the effects of a passing vessel when stepping between ships.

15